UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| CENTURY 21 REAL ESTATE, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DESTINY REAL ESTATE PROPERTIES, ) <br> and DANIEL SUTTON, ) <br> ) <br> Defendants. ) | Case No. 4:11-CV-38 JD |

**MEMORANDUM OPINION AND ORDER**

Now before the Court are Plaintiff, Century 21 Real Estate, LLC's motions for default judgment [DE 8] and for a permanent injunction [DE 11], filed on August 26 and October 21, 2011, respectively. Century 21 filed its complaint against Destiny Real Estate Properties and Daniel Sutton on July 6, 2011, alleging a breach of the parties' franchise agreement and trademark infringement, and seeking damages and injunctive relief. Both Defendants were served on July 13; neither have answered. On November 8, the Court directed the Clerk to enter both Defendants' default, and noted a deficiency in Plaintiff's evidence. *See* DE 13. Plaintiff promptly corrected that deficiency. Based on the allegations in the complaint and the statements and documentary evidence contained in or attached to the affidavit of Century 21's Senior Director of Financial Services Jacqueline Bertet, the Court now grants the motions in part.

**I. BACKGROUND**

Century 21 is a well-known, national real estate brokerage franchise system. It owns or licenses various trademarks, designs, logos, color patterns and business methods, which are on the principal register of the United States Patent and Trademark Office. Century 21 has exclusive

rights to these trademarks, and sublicenses them in connection with its nationwide franchise system. In 1999, it first entered into a franchise agreement with Destiny Real Estate Properties in Lowell, Indiana. That franchise agreement was renewed in June 2007 for a period of ten years. Under the agreement, Destiny was permitted to use Century 21's marks in connection with its real estate brokerage business. In exchange, Destiny agreed to perform certain obligations, including paying a royalty commission of 6% of its gross revenues and a "national advertising fee" contribution equal to 2% of its gross revenue each month; both fees were also subject to minimum monthly amounts established in the agreement (though the minimum royalty fee was waived in a separate addendum). Failure to pay these fees allowed Century 21 to terminate the agreement, after giving proper notice and an opportunity to cure the breach. Such termination would prohibit any future use of Century 21's trademarks and also trigger a liquidated damages provision designed to compensate Century 21 for the royalties and advertising fees it would have been entitled to over the life of the agreement. Finally, Destiny's owner, Daniel Sutton, executed a personal guaranty of the brokerage's obligations under the franchise agreement.

According to Century 21's allegations, Destiny repeatedly failed to make the required payments over the course of the agreement. In late 2010, Century 21 demanded that Destiny pay its balance by January 25, 2011. Destiny did not comply, and in a March 15 letter, Century 21 terminated the agreement. Since the termination, Destiny has continued to operate under Century 21's marks, including on signs outside its office and various websites identifying the brokerage as part of the Century 21 franchise system. As the owner of the brokerage, Sutton was allegedly the "moving, active, and conscious force" behind the trademark infringement.

## II.  ANALYSIS

As an initial matter, the Court notes that it has subject matter jurisdiction both because the matter arises under federal trademark law, *see* 28 U.S.C. § 1331, 1338, and 1367; 15 U.S.C. § 1121, and because the parties are diverse, *see* 28 U.S.C. § 1332. Defendants reside in the State of Indiana, within this judicial district, and thus venue and personal jurisdiction are appropriate. *See* 28 U.S.C. § 1391(a)(2).

A default judgment establishes, as a matter of law, that the defendant is liable to the plaintiff for each cause of action in the complaint. *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007).  The Court takes all well-pleaded allegations as true, but damages must be proved. *Id.* at 605. And while the Court may hold a hearing to determine damages, it is not necessary where the damages are capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits.  *See O'Brien v. O'Brien & Associates, Inc.*, 998 F.2d 1394, 1404 (7th Cir. 1993). Therefore, the Court will briefly consider each aspect of Century 21's requested relief.

### A.     Breach of Franchise Agreement

Century 21's allegations and evidence demonstrate the existence of the franchise agreement and its breach, Century 21's entitlement to damages in the amount owed under the agreement until its termination as well as liquidated damages, and the personal liability of Daniel Sutton under the personal guaranty.  Ms. Bertet's detailed affidavit also establishes that Defendants owed $52,460.81 under the franchise agreement and $61,196.13 in liquidated damages, or a total of $113,656.94. The franchise agreement also entitles Century 21 to attorney's fees and costs of $5,419.00 and $595.00, respectively, based on the amounts stated in the affidavit.   Default judgment in these amounts is therefore appropriate against both Destiny

3

and Sutton, jointly and severally.

**B.    Trademark Claims**

Century 21 also alleges trademark causes of action under the Lanham Act, including trademark infringement, 15 U.S.C. § 1114, false designation of origin and false advertising, *id.* § 1125(a), and trademark dilution, *id.* § 1125(c), and an additional cause under the Indiana common law of unfair competition. All these claims are based on Destiny's continued use of Century 21's trademarks after the termination of the franchise agreement and to this day. It further alleges that because Destiny has been using Century 21's exact mark, its infringement constitutes counterfeiting as defined in § 1116(d)(1)(B); since this counterfeiting has been knowing and willful, it is therefore entitled to mandatory treble damages under 15 U.S.C. § 1117(b). While it also desires an audit to determine the exact amount of profits resulting from the trademark infringement, Century 21 seeks as damages at least the minimum amount it would have received under the franchise agreement between the termination of the agreement in March and the filing of the complaint in July, or $4,560.00 plus treble damages. Century 21's allegations and evidence establish Destiny's liability: by holding over from the franchise agreement and continuing to use Century 21's trademarks, Destiny is infringing Century 21's mark by using it without authorization. But while liability on the trademark claims is readily established, three elements of Century 21's requested relief require additional analysis: whether the alleged conduct in this case constitutes counterfeiting or mere infringement; the appropriate measure of damages; and Daniel Sutton's individual liability.

      1.    *Destiny's Conduct Constitutes Counterfeiting*

First, there is mixed authority regarding whether Destiny's use of the mark constitutes counterfeiting, and thus allows the enhanced damages and attorney's fees and costs that Century

21 seeks. To establish counterfeiting, a plaintiff must establish four elements beyond mere infringement or false advertising: first, the mark must be "counterfeit," meaning "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127; *see also id.* § 1116(d)(1)(B)(i). Second, the mark must be registered on the U.S. Patent and Trademark Office's principal register for use on the same goods or services for which the defendant uses the mark. *See id.* § 1116(d)(1)(B)(I). Third, the defendant must not have been authorized to use the mark at the time the goods or services were manufactured or produced. *Id* § 1116(d)(1)(B). Finally, the defendant must have acted with knowledge and intent. *See id.* § 1117(b). The only element that is not clearly established by Century 21's pleadings and evidence is the first: does the continued use of a formerly authorized mark by a hold-over franchisee constitute the use of a "counterfeit" mark?

      The Court holds that it does, in light of the reasonable meaning of the statute and Seventh Circuit precedent, and notwithstanding split authority from other courts. The Seventh Circuit has not expressly considered whether a hold-over franchisee engages in counterfeiting if it continues to use the franchisor's marks despite the termination of its license. In fact, given the frequency with which Century 21 and other realty franchises find themselves in court to enforce their trademark rights, remarkably few courts have considered this precise issue. And the Courts that have considered the issue—rather than merely applying one rule or the other without discussion—have come to disparate results.

      First, the Sixth Circuit has expressly held that a franchisee's hold over is *not* counterfeiting. In *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185 (6th Cir. 1997), the plaintiff sued its former franchisee, a deck-construction business, for continuing to use the plaintiff's trademark "Archadeck" and other related trademarks. *Id.* at 1187. The district court

5

granted summary judgment in favor of the plaintiff, agreed that the defendant's misuse of the trademark constituted not just infringement but counterfeiting, and awarded damages, including treble damages under both § 1117(a) and (b), and mandatory attorney's fees for counterfeiting under § 1117(b). *Id.* at 1188. The Sixth Circuit affirmed on the merits, but reversed and remanded on the issue of attorney's fees, holding that "[a]lthough the [defendant's] use of an original trademark is without authorization, it is not the use of a counterfeit mark," and therefore attorney's fees were only available, if at all, under the more stringent standard of § 1117(a). *Id.* at 1192. The Court's holding did not explain why the defendant had not committed counterfeiting by attaching the plaintiff's trademark to unauthorized products and services.

Next, the Ninth Circuit held that in the context of certification marks—which differ in certain respects from ordinary trademarks—the continued use of a mark by a former licensee constitutes counterfeiting. In *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708 (9th Cir. 2005), a state agency sued a former licensee of several certified marks including "Idaho" and "Grown in Idaho" for, *inter alia*, violating the Lanham Act by purchasing bags with the plaintiff's certification marks on them and using them to package potatoes after the license to use the mark had expired. *Id.* at 712. The district court concluded that the unlicensed use of the certification marks constituted counterfeiting, and awarded statutory damages of $100,000 under § 1117(c). *Id.* at 720. The Ninth Circuit affirmed the award of statutory damages. *Id.* at 720–22. It held that when a registered mark is used without license, whether it constitutes counterfeiting turns on whether the use of the mark was likely to cause confusion. And it reasoned that an ex-licensee's continued use of a certification mark, which implies that the goods or services meet certain standards, is likely to cause such confusion. *Id.* at 721. In reaching its conclusion, the Ninth Circuit noted the Sixth Circuit's decision in *U.S. Structures* as

contrary authority, but did not otherwise discuss the case or indicate that its decision created a circuit split. *See id.*

Then, in *Pennzoil–Quaker State Co. v. Smith*, No. 2:05cv1505, 2008 WL 4107159, at *22 (W.D. Pa. Sept. 2, 2008), the Western District of Pennsylvania held that the use of actual Pennzoil marks by a successor business to a formerly licensed distributor was not counterfeiting. There, the plaintiff sued the defendant oil-changing business for displaying, without authorization, signs that had been loaned by Pennzoil to the former business. *Id.* at *4. The court concluded that the defendant was guilty of trademark infringement, but not counterfeiting, because the marks themselves (which actually belonged to the plaintiff) were genuine and thus that plaintiff could not satisfy the "counterfeit mark" element of counterfeiting. *Id.* at *20–22. It reasoned that "[t]he plain language of the statute indicates that the term 'counterfeit' refers to the mark itself, not the nature of the goods or services associated with the mark." *Id.* at *21. The Court distinguished the Ninth Circuit's decision in *Idaho Potato Comm'n* on the grounds that counterfeit marks serve uniquely different purposes than ordinary trademarks, and instead found the Sixth Circuit's holding in *U.S. Structures* instructive. *Id.* at *21–22.

Finally, while the Seventh Circuit has not expressly considered whether a hold-over franchisee's continued unauthorized use of a franchisor's mark constitutes counterfeiting, it has provided some guidance. In *General Elec. Co. v. Speicher*, 877 F.2d 531 (7th Cir. 1989), the court held that counterfeiting is not limited to reproduced (literally "counterfeit") marks and includes the use of a genuine mark on an unauthorized product. There, General Electric brought an infringement action against a company that was supplying customers its own inserts for industrial cutting tools in General Electric-labeled boxes. The defendant argued that the scheme involved no counterfeit marks because General Electric had itself placed the mark onto the boxes

7

at issue. The district court agreed that the use of genuine marks could not constitute counterfeiting, but the Seventh Circuit disagreed: "The happenstance of having trademarks made by the owner in one's possession, so that one doesn't have to copy them, has no relevance to the purposes of the statute. Indeed, the danger of confusion is even greater because the 'imitation' is not merely colorable, but perfect." *Id.* at 535. There are of course many differences between the deceptive packaging in *Speicher* and the situation of a hold-over franchisee. But the fundamental principles are the same and the analogy is instructive: the ex-franchisee sells a non-genuine service wrapped in the "package" stamped with the former franchisor's trademarks. The consumer associates the service with the franchisor's brand and may never know that the service provided was unauthorized. Profits are diverted that may have gone to sales of authorized services, and the franchisor loses control over its trademarks.

Thus, the Court concludes that the Sixth Circuit's rule from *U.S. Structures* is not viable in the Seventh Circuit in light of *Speicher*. Moreover, the Court would not likely adopt the holding of *U.S. Structures* even if circuit precedent did not foreclose it. If an unrelated entity had created an identical trademark and provided authorized goods or services (or the kind provided by the owner of the mark) under that mark, there would be no question that there was counterfeiting. The Court can conceive of no reason why an ex-franchisee should escape liability for counterfeiting simply because that person had access to a franchisor's original marks because of the former relationship and therefore did not need to reproduce an identical or substantially similar mark. Indeed, as *Speicher* points out, the risk of confusion is greater when an original mark is used to designate inauthentic goods or services. Further, the Court is not convinced by *Pennzoil*'s attempt to distinguish *Idaho Potato Comm'n*. While certification marks indeed serve unique purposes distinct from those of ordinary trademarks, the purposes of avoiding public

confusion and safeguarding the value of trademarks are common to trademarks and certification marks. And it is these purposes, not some other unique public interests, that underlie the enhanced liability for trademark counterfeiting. The Court therefore holds that Destiny's continued unlicensed use of Century 21's trademarks in reference to services that have no connection with, nor approval from, Century 21, constitutes the use of counterfeit marks.

2. *Appropriate Damages*

The next issue is the proper amount of damages. Because the trademark claims involve a counterfeit mark, 15 U.S.C. § 1117(b) specifies the proper calculation of damages as "three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee." In addition to its attorney's fees and costs, Century 21 requests three separate awards in connection with its trademark claims: (1) actual damages equal to the minimum royalties and advertising fund contributions between the termination of the agreement and the filing of the complaint; (2) a separate award of treble that amount of actual damages; and (3) treble the amount of damages and profits uncovered in an accounting of Destiny's profits. The Court recognizes that courts have found that treble the lost franchise fees calculated under an expired franchise agreement may be an appropriate measure of damages when a franchisee infringes a franchiser's trademark by holding over. *See Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1565 (11th Cir. 1986). But the Court believes that awarding all of these damages would result in at least some double recovery. First, Century 21 cannot recover its claimed actual damages ($4,560.00) *plus* treble that amount ($13,680.00): that would be four, not three, times its damages. Second, § 1117(b) provides for damages in the amount of the greater of trebled profits or damages, not both: to the extent that the accounting of profits (which the Court orders below) reveals profits or damages resulting from the infringement greater than the actual

9

damages currently claimed, the higher amount of profits or damages, trebled, will be the total award for trademark infringement and false advertising.

Third, the Court is concerned that the liquidated damages awarded under the breach of contract claim already account for at least a portion of Century 21's lost profits. The Court recognizes that some authority permits this double recovery, apparently under the theory that the liquidated damages and trademark damages compensate for different injuries and that limiting damages to liquidated damages gives incentives for franchisees to hold-out and continue using licensed marks despite the termination of the franchise agreements. *See Ramada Inns*, 804 F.2d at 1565–67. It is certainly true that breach of contract and trademark infringement are separate wrongs. And it is equally true that limiting a franchisor's recovery for trademark infringement to the agreed-upon liquidated damages would create perverse incentives for a franchisee to hold-over and continue to use a franchisor's trademarks without authorization. But what is at issue is not the number of wrongs, but the proper measure of the damages caused by those wrongs.

The Court does not read *Ramada Inns* to imply that the existence of two separate wrongs *automatically* creates two separate sets of damages. In this case, the liquidated damages provision is intended to compensate Century 21 for the loss of a royalty stream it would have had but for the franchisee's breach of the agreement. Century 21's claimed damages represent payment for the same lost royalty stream. Thus, the Court believes that a trebling of the lost royalty stream, on top of the liquidated damages award under Count I, would result in a recovery of *quadruple* damages. While Century 21's harm from Defendant's infringement may go well beyond lost royalties to include damages resulting from the trademark holder's loss of control over the mark, the dilution of the value of the mark, public confusion, and other harms, the

trebling provision of § 1117 accounts for the difficulty of ascertaining the extent of the actual harm.

Therefore, because Century 21 will be compensated for its lost royalty and advertising fees through liquidated damages, the Court will reduce the award of treble damages for the trademark claims by a third, resulting in a total award of two-times the $4,560.00 of lost fees stated in Ms. Bertet's affidavit, or $9,120. Should Century 21 choose to conduct the ordered accounting, the Court invites Century 21 to file a supplemental claim for damages based on additional evidence of the damages or profits resulting from the violations of the Lanham Act.

3. *Sutton's Individual Liability*

The circumstances that allow recovery directly against individual corporate officers and agents is also litigated with far less frequency than one might expect. Long ago, the Seventh Circuit took the position that individual officers are not ordinarily liable for the infringement of their corporation "in the absence of some special showing." *See Dangler v. Imperial Mach, Co.*, 11 F.2d 945, 947 (7th Cir. 1926). Just what qualifies as such a special showing has not always been consistent or clear. *Dangler* itself implied, based on prior precedent, that officers were generally only liable when they acted outside of their official capacity to further their personal interests, but it did not foreclose other situations in which officers might be held liable. *See id.* The court of appeals has also upheld individual liability where there was evidence of "deliberate conduct on the part of the officers to use the corporation merely to carry on the infringing and unfair practices." *General Motors Corp. v. Provus*, 100 F.2d 562, 564 (7th Cir. 1938). Finally—and though it seems to swallow the never-overturned rule of *Dangler*—the Court has held that a chief officer and manager of a corporation may be held personally liable where "he

was at all times in control of the administrative and managerial policy of the corporation." *See Weller Mfg. Co. v. Wen Products, Inc.*, 231 F.2d 795, 801 (7th Cir. 1956). Other courts have reached similar conclusions, extending liability to corporate officers who were proven to be "'a moving, active, conscious force' behind the corporation's infringement." *Ramada Franchise Systems, Inc. v. Boychuk*, 283 F.Supp. 2d 777, 788–89 (N.D.N.Y. 2003).

In this case, the allegations, taken as true, are insufficient to meet *Dangler*'s "special showing" requirement, even under the broadest understanding of officer liability. The complaint contains only two allegations concerning Sutton's role in the infringement beyond the bare assertion of the legal conclusion that "Sutton was and is the moving, active and conscious force behind the misconduct." First, Century 21 alleges that Sutton "was or is the President of Destiny," but this does not even establish that Sutton was President at the time of the alleged infringement, much less that as President he was directly involved with or even knowledgeable of the infringement. Second, the complaint states that Sutton, "as an owner of Destiny, authorized and approved the misconduct." These allegations fall short of those approved in *Provus*, *Weller Mfg.*, or *Boychuck*, and are really nothing more than a general allegation that Sutton was an officer and an owner of the company. But if officers or owners were personally liable for their corporation's infringement based solely on their role or ownership interest, owners and officers would be liable as a matter of course, which is plainly not what *Dangler* envisioned. Thus, absent allegations or proof of any facts that establish his personal involvement in the infringement, through control or approval of the company's acts, Sutton may not be held personally liable for Destiny's infringement.

C.     **Injunctive Relief**

Century 21 is not automatically entitled to a permanent injunction merely because it is entitled to default judgment. *See e360 Insight*, 500 F.3d at 604 ("[A]lthough a default judgment establishes liability, it does not answer whether any particular remedy is appropriate."). "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006). Century 21 is suffering several continuing injuries that would be difficult to remedy without future litigation, but the injury especially justifying injunctive relief is the loss of control over and harm to its valuable name and trademark, in which it has invested substantial effort and money over time to develop goodwill.

The Court considers the balance of equities and the public interest by tailoring the injunctive relief ordered to the facts of this case. Defendants are certainly enjoined from continuing to use Century 21's trademarks and from any actions that might suggest to the public that Destiny is a Century 21 franchise authorized to use its trademarks. In addition to refraining from any new infringing acts, Destiny must take the following steps, consistent with Section 16.4 of the franchise agreement, to prevent continued confusion: remove all signs and billboards identifying it as a Century 21 affiliate or broker; cease using Century 21's marks on any website, discontinue altogether the use of any domain name that includes Century 21's name or other marks, and contact any third party website, including MLS listings, that identifies Destiny as

associated with Century 21 and request that any such references be removed; and assign its telephone numbers to Century 21 or its designee. The Court does not order corrective advertising in this case because any lingering associations in the public's mind between Destiny and Century 21 are more the result of the decade-plus affiliation than the post-termination infringement. In any event, the injunctive remedies above should sufficiently demonstrate to the public that the relationship has been severed.

In addition, Destiny must allow Century 21 to conduct an audit of its books and records to conduct an accounting for profits and damages resulting from the trademark infringement, false designation of origin, trademark dilution, counterfeiting, and unfair competition. That accounting will provide the basis for an additional award in favor of Century 21 on the trademark related claims.

### III.  Conclusion

Therefore, Century 21's motions for default judgment [DE 8] and a permanent injunction [DE 11] are **GRANTED**.  The Court hereby **ORDERS** that final judgment by default, as authorized by Fed.R.Civ.P 55, be entered on Counts I–IV, in the sum of $9,120.00 in favor of Plaintiff Century 21 Real Estate LLC and against Defendant Destiny Real Estate Properties, LLC f/d/b/a Century 21 Destiny Real Estate; and on Counts V–VI, in the sum of **$113,656.94** plus attorney's fees of **$5,419.00** and costs of **$595.00**, in favor of Plaintiff Century 21 Real Estate LLC and against Defendants Destiny Real Estate Properties, LLC f/d/b/a Century 21 Destiny Real Estate and Daniel Sutton jointly and severally. Plaintiff may seek additional damages based on additional evidence of damages or profits discovered in the accounting ordered below, but it must file any supplemental claim for such damages **within 90 days of the date of this order.**

Further, the Court **ORDERS** the following:

1.  That Century 21 shall be entitled to conduct an audit of Destiny's books and records within 30 days of the date of this order;

2.  That Defendants and their agents, servants, employees, and all persons acting in concert with them, shall be enjoined from:

    (a)  using the Century 21 Marks in marketing, advertising or promotional materials, via the Internet or otherwise, in connection with real estate services or any other similar business, and

    (b)  otherwise infringing the Century 21 Marks;

3.  That Defendants:

    (a)  remove all signs and billboards, if any, identifying themselves as a Century 21 affiliate or broker;

    (b)  cease using any and all Century 21 marks on Defendants' websites, including:
    **http://www.century21destiny.com/**,
    **http://www.facebook.com/pages/Century21-Destiny-Real-Estate/147099852006117**, and
    **http://www.yelp.com/biz/century-21-destiny-realty-inc-lowell**,
    including the metadata of these sites;

    (c)  contact third party websites and other websites, including all MLS listings, that contain any reference to Defendants' current or former business as having an association or affiliation with Century 21 and to remove any mention of Century 21 in connection with their name or business;

    (d)  provide documentary evidence to Century 21's counsel within 14 days from the date of this Order indicating that Defendants have fully complied with provisions (a) through (d) herein;

    (e)  assign their telephone number for their former franchise offices to Century 21, as well as cease from answering the telephones as "Century 21" immediately and until such assignment occurs; and

5.  That this Judgment shall be deemed final and enforceable, there being no just reason for

15

delay in enforcement as against Defendants.

SO ORDERED.

ENTERED:  December 19, 2011

                                                    /s/ JON E. DEGUILIO
Judge
United States District Court